This is case number 21-12800, United States of America v. James Batmasian, and I hope I pronounced that correctly. I'm sure someone will let me know if I did not. And Mr. Sachs, you have some time reserved for rebuttal, but why don't you go ahead and get started? May it please the Court, I'm Spencer Sachs, and I represent the appellant James Batmasian. Unlike every other expungement case where the defendant is coming before the court for a selfish reason, that they want a better job, something about their reputation being improved, my client is coming before this court solely to benefit the public by contributing more than a billion dollars to the public charities that he would like to continue to contribute to. As the court will notice, in the sentencing hearing, the judge specifically found that Mr. Batmasian has demonstrated a giving that really is of no benefit to him, but is really designed to benefit others. Therefore, he had a history of charitable giving prior to his conviction. He has continued to do so, and now he's at the point of his life in his mid-70s that he is trying to give away the bulk of his estate. Unfortunately, the giving pledge... Counsel, can we talk about jurisdiction? Sure, you're on. Because that's really, I think, where the district court focused on, and I think where we need to focus on first before we get anywhere else. So you agree with me, the coquinean, I'm going to pronounce that wrong, test applies here, correct? I would agree that as to solely equitable jurisdiction, yes, but we're also raising the Constitution. Well, the test applies whether you fit within it or without it, I think is the answer. But when you went to the district court, you said, you have ancillary jurisdiction to be able to hear this, and you're saying that it fits within it because it's a constitutional claim, correct? Right. Okay. But you agree with me at the least that the coquinean test is the test that we look at to decide whether there is or is not ancillary jurisdiction. With the exception of the 10th Circuit and the D.C. Circuit, all the other circuits, and plus the unpublished opinion of this court, all of them follow the coquinean case. Do you agree with me that that has to be the way that we look at ancillary jurisdiction? Although that case was a civil case, and the court failed to retain jurisdiction, that has now been accepted in criminal cases, apparently, and that is now the national standard. Okay. So, and I think I agree with you. I think that has to be the lens through which we analyze whether there is or is not ancillary jurisdiction. What difference does it make that a constitutional issue versus any other issue, whether it's equitable or not? Where in coquinean do we draw that distinction between a constitutional claim, which somehow is treated differently from any other possible claim? So, let me give you an example. In coquinean, it was about reserving on the settlement agreement, right? Correct. Imagine if the claim had been, hey, court, I want you to enforce the settlement agreement. It was, I want you to enforce the settlement agreement because I have a Fifth Amendment property right in the basis of the settlement agreement, and the failure to do so is a taking. So, imagine that hypothetical. Would that have changed the analysis in coquinean? No, it wouldn't change the analysis in that court. What the court there was saying that where the court hadn't retained jurisdiction, it was only in very limited circumstances, specifically regarding equitable jurisdiction. Again, they don't comment specifically on constitutional. I would like to say that— It's a constitutional claim. I agree with you. I don't see why it would be different. I'm just having trouble understanding why the analysis somehow changes because the underpinning of what you're asking the court to do is constitutional as opposed to something else. Because the case law has limited itself solely to equitable and not constitutional. And in fact, there's case law that says, and other circuits as well, that says that constitutional seems to be an exception to allow jurisdiction. I just don't know where those, certainly in dicta, a lot of courts have said something like that, although I want to drill into that a little bit. But where do they get that from? Why are they right? They just set that exception out there. They don't give a justification for the exception. I know, but— I'd be guessing at what it would be. But if we're going to write something, we got to look at the intellectual underpinning of what that is. And if it starts from coquinean, I'm having trouble understanding why there would be and why we would say, this is how we apply it, but maybe there might be some constitutional thing that's out there. I think it's just in addition to the extraordinary circumstances test, where they could have just shut down expungements right off the bat and say, we're not going to grant any expungements, there's no jurisdiction, period. They decided to carve out exceptions where they say, well, if you have jurisdiction for the first part, you have jurisdiction second part under coquinean, the two bases. But then there's so much case law that says, and also constitutional. So the constitutional right, and does that somehow trump the underlying opinion of coquinean? And you're not proceeding, as I understand from your briefing, before this court, not before the district court, but before this court, you're saying that if indeed your client's request for expungement was equitable, the district court below would have been correct. So you're saying, this is not, we're not requesting equitable expungement, we are proceeding solely under constitutional. That is correct. We conceded that in our brief. Okay. So if we find that the coquinean test, if we find that you are proceeding, seeking equitable expungement, you would lose. Solely. If I was proceeding solely, I think the case law has been, is fairly strong, except in two circuits, as well as the unpublished opinion of this court in the Adelakku case. So let's drill down on that. Let's assume that there is this magical exception that somehow exists. Every court circuit that I've looked at has suggested that the constitutional basis has to be something that calls into question the underlying conviction, or somehow implicates prosecutorial misconduct. In other words, underpins the existence. I've never seen one, and I'd be interested for you to point to me, in one that's completely collateral, meaning has nothing to do with the underlying conviction, but is instead, now the restriction on this has affecting a constitutional right. I'm not relying on a particular case. I'm relying solely on the language in the cases, including a very recent decision in this circuit that was issued three weeks ago in the Southern District of Alabama, where the court said that a constitutional claim gives the court the discretion to go ahead and accept jurisdiction, and then to get to the merits. So now, I just want to be clear. The rule you want us to write is not only to create a constitutional exception to coquinian that somehow isn't mentioned at all in the opinion itself, but that is different from every other circuit in that it just has to be constitutional. It doesn't even have to be specific to the underlying criminal conviction. That is the reach that I'm asking. However, I don't think you're asking the court, I'm not asking the court to go outside coquinian. I'm merely saying coquinian is limited to purely equitable. Except the problem is coquinian seems to suggest, first of all, show me where in coquinian it says it's limited to purely equitable. I don't think the word equitable appears in there, but coquinian says is jurisdiction is limited and ends. In other words, once a case is filed, it doesn't go on forever and ever and ever. There's an end to everything, including litigation. And once that ends, you can't just say, okay, I'm filing a motion in that case 20 years later. There has to be something that allows the court to be able to take jurisdiction of that. Otherwise, there has to be a different or new jurisdictional basis. That's what I read coquinian to be. Do you agree with me on that? I agree with you. The first part is the interrelationship between the facts. Now, in this case, if I'm forced to say what's the interrelationship, it would be during sentencing, the court made specific note of my client's charitable contributions. And then all this is is an extension of that where we're now saying, based upon his charity and based upon his need to make further charitable contribution, the court has some jurisdiction over this. In Lucinda, though, which is the six or K judge, Judge Sutton really sort of drills down on that and seem to suggest that expungement, which is the sort of the shielding of records is very different from the merits of an underlying conviction, which is did was attacked. Did the defendant have a tax evasion? What's the sentence should be? Those are really different things. Do you agree with me? I do. But, you know, if you look at the Adelaide case, there is no way that any defendant who's seeking expungement could ever meet that first test. I think you're right about that. No one could ever meet that. Therefore, that's why I argue they're really two different purposes and two different bases for jurisdiction. So it's not that we have to satisfy one and number two. And the Adelaide case says it's a two prong test. It's not a two that that I agree with. OK, so I apologize. No, counsel, can we move on to that? You're about to run out of time on on your opening remarks. Let me just ask you two questions about the merits, like assuming we determine that your jurisdictional argument is correct. You are arguing that unless his convictions are expunged, he is not he will not be able to give to charities as he would like. And you have cited examples where he has tried to and the charities have turned him down. The two questions I would like for you to address pretty quickly. Number one, this is not any action that the government is parties are taking. But number two, I'm not sure that you have demonstrated at all that he's been pardoned and the charities have still been reluctant to have and participate. How do we know that an expungement is going to solve this problem? I think you've said we think this might help, but otherwise I'm not sure you've even demonstrated that to be correct. Could you address those two issues? Well, I mean, I'm relying on what was presented in our motion in the underlying case. And we all I have is my client's belief on that plus letters from charities that said we will not allow them to serve on a board, even charities that he created because of his felony conviction. But they haven't said, but hey, if you go ahead and get both a pardon and also an expungement, that solves the problem. I never was able to get an evidentiary hearing before the court. The court just ruled on the papers where we argued that we've made these attempts, we're being rejected by the charities and charities which are regulated by the government. I mean, what the reality in life is that a charity is not going to accept unbelievable contributions from a felon. They're not going to allow a felon to serve on the board of the charity and direct the contributions. He is practically prevented from doing that. All he can do is write a check, small checks to lots of little charities, which in our brief we've indicated all the charitable giving that he has done. But he could not get anything of substance approved by any charity because they're governed by the regulations of not-for-profit charities. I mean, it's a practical reality in his life that he got a presidential pardon, he got a restoration of his civil rights from the governor. So he's done everything he can do. This is the only thing left that he needs to do that gives him at least an opportunity to give his great wealth out to the public. All right, thank you. I took you over time, but you still have five minutes for rebuttal. Thank you, Your Honor. Mr. Bott. Good morning, Your Honors. May it please the court. Kieran Bott for the United States. With me at council table is Mark Anton, who handled this matter before the district court. Your Honors, this court should affirm the district court's well-reasoned order following Kokanen and declining to exercise ancillary jurisdiction over Mr. Batmazian's fundamentally equitable expungement motion. Every court of appeals presented with the legal issue now before Your Honors, the first circuit in Colloian, the second circuit in Doe. Counsel, I'm not sure I agree with the premise. I think you have to accept the premise that this in a procedural posture like this. That's the question that you have to answer. You're trying to elide the harder question to get to answer a really easy one. Yes, everyone agrees. If this is equitable, it doesn't fall within Kokanen. That's not what your opposing counsel is saying. So you're not even assuming that the talismanic invocation of the First Amendment in this case does provide a constitutional basis? Assume that it does. In that case, Your Honors questions, Judge Luck, your questions initially to Mr. Sachs regarding the second prong of the Kokanen test, the authority of courts to exercise ancillary jurisdiction to vindicate its authority, to effectuate its decrees. In some narrow instances, certain courts of appeals have recognized in dicta that there are constitutional defects with the underlying proceedings. I know what every other circuit has said. We've read the cases. I'm asking you what you believe and what you're advocating for us to adopt as a rule. So this case does not raise any question regarding the propriety of the underlying prosecution. There might be some circumstances in which such... So the government is telling us that it wants us to adopt a rule that despite the stringent test in Kokanen, there is a separate constitutional exception where, as I understand what you're saying, the constitutional claim goes to the underlying conviction. No, Your Honor. I don't think the facts of this case actually warrant that. In this case... Tell me what the rule you would adopt is. So the Sixth Circuit case field, I think, provides a pretty good description of a circumstance in which an individual could raise a constitutional claim, but that claim would not confer the district court with ancillary jurisdiction. In that case, there was a defendant who moved to suppress evidence. The evidence was, in fact, suppressed. The district court excluded all of that evidence. The government dismissed the indictment. And then the defendant moved to expunge all of the records of her arrest, her conviction, and so forth. And the Sixth Circuit acknowledged that there were some constitutional issues that the district court recognized. But with respect to the request to expunge arrest records, the Court of Appeals found that because the district court had not actually ruled on the propriety of the arrest, on the constitutional validity of the arrest, there was no ancillary jurisdiction. And I think this case is similar. So, Mr... What if in that case, though, the claim had been, I was arrested illegally based on evidence of trumped-up evidence? Let's say that's the claim that you bring. And therefore, I want my arrest records expunged. Does a district court, 20 years later, have jurisdiction in a case like that in order to litigate it? So if, I think, under the logic of the Sixth Circuit and fields, the answer to that is yes. What's the rule that the government is asking us to adopt? The rule that the government is asking the court to adopt is that in cases where there is no allegation of any sort of underlying defect with the prosecution, the basis for the Section 3231 jurisdiction of the district court, there is no ancillary jurisdiction. Okay. I just want to know where that comes from, though. In other words, where does that come from, this rule? Is it, are you saying it comes from the second prong of Kokinian? And that is exactly what, Your Honor, what the... to shield records. That's all the request is. Make the records go away or shield them in some way or seal them because of this underlying thing. How does that vindicate the court's authority in a prosecution and sentencing? I mean, the court's authority is vindicated by dismissing the case because of some sort of prosecutorial misconduct or suppression. How does expungement, 20 years later, vindicate the court's authority like attorney's fees or sanctions or something like that? Your Honor, I don't think that the facts of this case actually... I'm asking you the question. I get it that you think that's different here. I would say it's debatable. It's a debatable prospect as to whether the request to expunge records many decades later actually does vindicate the authority of the court. The government is acknowledging that certain circuit courts of appeals have found that, but Your Honor's right that there is an argument that, in fact, it does not vindicate the authority of the district court to expunge records decades after a conviction has occurred. So, to proceed, I think that there are some references that were made in Mr. Sachs' arguments to the merits of the case. I'd like to address, Judge Branch, the questions that you asked towards the end. So, assuming that there was ancillary jurisdiction in this case, which the government is not conceding, the merits of this case were handled appropriately, properly by the district court. There was no abuse of discretion. The Fifth Circuit Court of Appeals in the Rogers v. Slaughter case indicated that the judicial rewriting of history is usually not a good idea and, I think, put the thumb on the scales for the government and the public's strong interest in the maintenance of accurate records of criminal proceedings. And, in this matter, the district court looked at that balance, weighed the rather natural consequences of Mr. Batmazian's valid criminal conviction. There is no issue with the underlying criminal conviction that's been raised in this case. Weighed that against the governmental and the public interest in ensuring the appropriate maintenance of records. Certain courts of appeals, the Fifth Circuit Court of Appeals in the sealed Appellant v. Appellee case, have actually acknowledged that there is potentially a separation of powers issue associated with the judiciary ordering the executive to expunge records that, in some instances, Congress has required the executive to keep. And so, in light of the separation of powers issues, in light of the strong... It's not true, though, as to judicial records. In other words, if the claim is just, you, the judiciary, keep records, we want you to seal those records, we'll deal with the FBI on our own. You would agree that wouldn't implicate... Yes. Yes, Judge Luck. We would agree with that. That's correct. And I think we're speaking of judicial records, that goes back to the discussion we're having regarding jurisdiction and the Cochrane test. But with respect to the expungement, for example, of arrest records or other records that the government keeps, and it's unclear from the papers what exactly or which expanse of the records that Mr. Batmazian is seeking to have sealed. But assuming that they include arrest records, there is the separation of powers issue. And so... What about the fact, though, that he... Just his opening remarks are telling you, this is a man who has great wealth, who wants to donate it for charity, and so this is going to fall into one of those extreme circumstances that historically has warranted expungement. What would be your response to that? The sorts of extreme circumstances, Judge Branch, that the courts have recognized are cases where there was some real manifest injustice. So, a situation where there were mass arrests or where local authorities were motivated by present situations in which there was some sort of governmental misconduct at issue. Mr. Batmazian's case involves the natural consequences that are associated with sustaining a valid criminal conviction. Just as Mr. Batmazian claims that there is a First Amendment right for him to donate to charities, there is also a First Amendment right for those same charities not to associate with Mr. Batmazian after reviewing the public papers and doing their diligence, so to speak. And so, the government would argue that the validity or the colorability of that First Amendment claim is suspect because Mr. Batmazian, as the court has indicated, there is no governmental action that he's identified that would restrict his charitable giving. He is simply claiming a First Amendment restriction. What about the giving to the university? Part of his claim, this wasn't really explored all that much by the district court, but part of his claim is that he has been involved in or wants to give to Florida Atlantic University, which is a public university, and that somehow has been thwarted from that. Wouldn't that implicate government action? I think the record is not sufficiently clear to to indicate that. The motion, the expansion motion is specific about Florida Atlantic University as one of the places for which he was precluded from giving. Do I have that wrong? I believe that is right. He didn't mention that there was a university in Florida that he wished to donate to, but the issue is that he hasn't alleged that there's specifically tied or that there was some specific communication in which the governmental actor was restricting his speech on the basis of the conviction or the fact that his records had not been expunged. And so, it's the government's position that the First Amendment claim that he's raising really doesn't, it's amorphous in nature, and in fact would trample on the First Amendment rights of the charities and institutions that do not wish to associate with him. I think Your Honor's understanding. He's also suggesting that the charities are motivated by a concern over compliance with regulations, that they don't want to have a significant donor or perhaps somebody who is serving in some sort of board capacity because they think the charities believe they would run afoul of some regulation. Right, and Judge Brent says regulations aren't identified. It's not sufficiently clear to the government, I would think to the court, what regulations Mr. Batmazian is complaining of, and in those circumstances it's, the government doesn't view that claim as sufficiently clear or valid for the court to write on or for the court to base. This is from page 10 of his motion, docket entry 43, paragraph 12. The conviction has and continues to cause exceptional difficulties and hardships to Mr. and Mrs. Batzmanian's personal philanthropy, especially with new and pioneering philanthropic endeavors and the desire to be proactive with the charity. For example, A, several years ago the Batzmanians offered to endow a real estate chair at a Florida university, it's FAU. The offer included James giving lectures in real estate and mentoring students. The university declined to accept the gift and create the real estate chair, which is believed to be solely due to the conviction. Why is that not state action? I think Judge Branch asked a question of Mr. Sachs, Your Honor, that gets at this issue, which is it's not clear why expungement would actually remedy that concern. So that, but that's a causation issue, that's not a jurisdiction or a merits issue, or it's a merits issue that seems to be very different from the one that was identified by the district court. I understand, Your Honor. I do think that there is an argument that there's a First Amendment concern around a public university's actions, but the record isn't sufficiently clear and I think I'd like to go back to the jurisdictional basis. Is the record not clear way in favor of your opposing counsel's request for an evidentiary hearing? No, Your Honor, because I think the court doesn't have jurisdiction to entertain the request to begin. No, but we're sort of past that, right? We're at the merit stage. So if the record's unclear and there's at least an implication, shouldn't the district court have taken at least some evidence on that issue? Assuming that the court had found jurisdiction, that may have been appropriate, Your Honor, but I don't think that the court had jurisdiction to consider the merits of the petition to begin with. And so, in those circumstances, I don't think a remand would be appropriate. Assuming that there was ancillary jurisdiction or that somehow Mr. Batmazian was able to get around the Kokinden Bar. Why is a, let me ask it this way, why is a significant constitutional claim, I understand you, we, there's issues that you're attacking with regard to the merits of this particular one. But let's say there really was a compelling but ancillary, truly ancillary constitutional claim. Why would that be different from one that goes to the merits of the underlying action versus one that doesn't? In other words, what if, because of the conviction and because of the lack of expungement, there truly was some sort of implication for a defendant's First Amendment rights that we all concede was significant. Why would that not be an extraordinary basis for which to allow expungement? Well, Your Honor, it is purely collateral. So the issue with It would be. It would be purely collateral. And that's the issue. That's the central issue. There is no authority under Kokinden when there is a purely collateral constitutional issue that's raised. I think Kokinden, the only argument for district court's jurisdiction, ancillary jurisdiction under Kokinden, would be through that second prong. And Your Honor's challenged even the basis of that reasoning, that there's some notion the district court should be able to vindicate their authority by considering these sorts of proceedings 20 years later. The central issue with the constitutional hypothetical that Your Honor is raising is that it's purely collateral to the underlying action. And so the district court's original jurisdiction over the case, derived from Section 3231, a constitutional claim later on filed in the same docket, but based off of facts that have nothing to do with the underlying proceeding, I think clearly falls. But what's a defendant to do? So let's frame this as a 1983 action. So you file a 1983 action. You say the state is impinging on my First Amendment rights because of this, and the remedy I seek is expungement. Who is he supposed to sue for judicial records? Supposed to sue the court? I think perhaps there's a way to potentially file a civil lawsuit to try to seek an injunction or something of that effect. Against who? Who are you enjoining? But Your Honor, the question before this court is... I know, but why is it not okay to go back to the original case under the court that has jurisdiction over the very records that someone's seeking to expunge, instead of having to go and pay the $400 filing fee to do exactly the same thing that we're doing now? Why is that line so significant? Because, Your Honor, the jurisdiction of federal courts are limited. I think this is fundamentally about the beginning portions of the Kokanen opinion in which Justice Scalia explains that federal district courts cannot simply, by decree, increase their subject matter jurisdiction. Because the Supreme Court has limited the ambit of ancillary jurisdiction, and because courts subsequently interpreting that have consistently and routinely held that that ancillary jurisdiction is limited, it is not appropriate for federal district courts to, by fiat, increase their subject matter jurisdiction in order to hear that sort of case. And with that, I see my time is up. Thank you very much, Your Honors. Thank you. Your Honor, I was checking through the district court cases in the 11th Circuit to see if since the Kekanen case, there has been any of those courts that have gotten to the merits. And by my count, there have been eight cases where the courts have gotten to the merits, including the one most recently in the Southern District of Alabama, and even two cases since the court's So, you know, this is not a settled issue. Now, again, why I think our case is unique is we are the only defendant to come before the court where there is going to be a weighing test. So we can get past jurisdiction, but if there is a weighing test of the public benefit of keeping accurate criminal records and the public benefit of sizable contributions to the public, we're the only is looking for a personal benefit, and there is zero public benefit. So if we can get to the weighing test, then I believe, you know, in this case, we believe the scale is in favor of our client, but at least we're on the scale. So I would like to make sure that that was clear, that one of the issues we take up with Judge Marra's ruling is he was weighing the constitutional claim against the public benefit of having accurate criminal records. My position is he should have been weighing the benefit to the public behind what our client was proposing, which is the charitable contributions which benefit the public, and you weigh that against the public interest in having accurate criminal records. So I just wanted to make sure that argument was clear. Number two, we are not asking charities to be forced to take our client's money. We are merely saying they need to be allowed to take our client's money if they so choose, and that's the problem here, is the reality is our client is a felon, and large charities, reputable charities, cannot take sizable contributions from felons. They will not let felons serve on the boards of those charities. So that's why we think that there's a compelling interest, extreme circumstances in this case that would justify the position that we take in this case. What are the regulations that you refer to that prohibit that? Federal regulations? Are they state regulations? There are federal 501C3 type regulations, and that's the feedback we get from the charities as to why they will not deal with our client, and as the Bill Gates and Warren Buffett charity, they didn't even respond. Are those communications in the record? Were they declined based on that regulation? We allege that, and our client verified it in their motion. That's the only record we have because we never got an evidentiary hearing where we could have paraded in all the witnesses and the charities and taken testimony on that. So it is a thin record, but that's the only record that we had that we could put in the record. You agree, though, that if a charity had decided, independent of any regulation or federal authority, I just don't want to have any felon on the board. We just don't like it. We're allowed to do it. We just don't want to do it. Of course. You agree that would not raise any constitutional issue. I totally agree. So the only basis or hook for the Constitution here is that there are some legal impediment to at least some of the charities having your client serve on a board or taking money. Whether it's FAU or just anyone who's governed by federal regulations where they can't accept large charitable donations. I mean, these are not things where you send $20 to the Red where he's trying to dispose of several billion dollars to charities and he's and he just is not in a position to do that question. Why would the expungement if the regulation? I don't know exactly what it is, but if the regulation states if someone is convicted of a felony, they can't give more than this amount or they can't serve on the board of directors. Expungement doesn't take that away. I mean, that's still that's still a fact, but it's an additional factor that that to make the argument that not only did he receive a pardon from President Trump, not only did he get the governor and the state cabinet go ahead and restore his civil rights, but he in fact got an expungement. We believe that is the final part of the puzzle that he's been trying for the last several years to do. Again, he gets no personal benefit out of this. Again, and I think that's what's kind of unique in our case from all the other expungement cases where we can argue equitable reasons, we can argue the constitutional reasons, and in fact, Judge Merritt didn't question that constitutional right to give charity, and the government didn't argue below against that, and they never argued against the merits of what my client wants to do. The question is whether this court can determine that there is an exception that allows jurisdiction in this case. My argument is a constitutional claim, First Amendment right. I believe there's state action here, and now the question is can we get to that balancing test where the public good of the charity meets the public good of keeping records. Thank you, Your Honor. Thank you. Thank you both.